Good morning. May it please the Court, my name is Stephen Montoya. I am here representing the plaintiffs. The question before Your Honors is a question that you've frequently considered before, in fact, that you've considered in the recent past, and that is the question of whether or not public entities, municipality or related entities, failure to have a policy regarding a danger that we believe was undeniably obvious and open, constitutes a violation of someone's 14th Amendment rights because it amounts to deliberate indifference to those rights. I don't think that anyone can deny, I don't think that the defendants denied in the proceedings below, that the fact that schoolchildren are frequently molested in the public schools is a danger that everyone is aware of. And it is a danger that public entities have a duty to do something about. Can we just explore this a tiny bit? I mean, are you saying that the city's default was not having a policy that says, thou shalt not molest a child? Or are you suggesting it should have some other policy? Yeah, go ahead. Okay. No, Your Honor. We're not suggesting that. No, we're not suggesting that. There's another policy, and that's the policy that, in fact, Sergeant Butcher actually proposed to the police department in writing after this case. Okay. So those, that kind of policy has to do with sort of with appearances. Prophylactic measures. It has to do with, like, appearances. It doesn't look good if you are, if you're alone with a child or if you drive a child home and things of that sort. So I just want to get clear exactly which policy it is that you're faulting them for. Yes, Your Honor. And I think that Your Honor has it exactly right. I wouldn't, I respectfully disagree with Your Honor's phraseology that policies regarding it wouldn't look good. Your Honor, I think policies that increase supervision and impose standard upon people who care for children in the public schools have more to look good. For example, if you can't drive a kid home from school by yourself, that has more to do than just looking good. You prevent the underlying opportunity, Your Honor. For example, is there any indication in the record that the city knew of any problem? Yes, Your Honor. Your Honor, let me answer that in two ways. First of all, was the department or the district aware that their agents were molesting kids on rides home? No. Were they aware that that was a problem? Yes.  You said that wasn't a problem. So the policy you're worried about as missing in action is a policy that would say don't drive kids home alone. Or don't be alone with kids all by yourself after school, don't socialize with kids at their house, at your house. Okay. So my question is, is there any evidence in the record that prior to the Dickinson incident being reported and disclosed, was there any problem having to do with any city employee or police officer being alone with a kid after school or driving a kid home alone? No, Your Honor. However, in the case of Dickinson, there was no problem. Then how can the city, in your view, be deliberately indifferent? I'll tell you. Yes. Because most police officers never did that. In fact, there was testimony that we didn't have policies because it was obvious that you shouldn't molest kids. But that proves my point, which is that there was no harm or no problem that the city knew about that it would address by some policy broader than obey the law and don't molest children. Your Honor, let me respond to that. There was no problem at the city at that time. However, there were problems at other cities. There were problems at other schools. In fact, everyone admitted that there was problems of police officers attacking women, engaging in sexual misconduct. Everyone admitted that there were problems at other schools where teachers were molested. Your Honor, just because it doesn't happen at your school, and if it happens at other schools, you should have a policy. The city runs a bunch of schools, presumably. I mean, I'm asking is there any evidence in this record that this city was aware of any problem having to do with its employees driving kids alone or being with them alone after school hours? Your Honor, no. So then what legal basis do you assert for saying that the absence of a policy, no circumstances, is unconstitutional? Your Honor, suppose you have a small police department and the police department is lucky enough that one of its officers has not raped a woman. I hear your reasons for wanting it to be so. It's deliberate indifference, Your Honor. Your Honor, we believe that the key ought to come up with a case. That's a pretty important question. It's not on negligence here. We're on deliberate indifference. I think you're right, Your Honor. I think that is an important question, and I'll answer Judge Reimers' question by citing the case that we cited to the district court and by citing the case that we cited in our brief to this court at length, and that is the case of Doe v. Estes. In that case, yes, Your Honor, that's our best case. And our second best case is this court's case in Kahn v. City of Reno. In Doe v. Estes, the district court concluded that there could be deliberate indifference if the threat was obvious, even though that threat was not actualized at a particular school. If it had been actualized in schools throughout the country, the coincidence and good luck that ---- Are you just asking us to assume that the threat is obvious? I mean, I guess maybe society has changed a lot, and maybe I'm just too old to be comfortable with it. But it bothers me that you're, in effect, asking the court to embrace an assumption that every city employee, every police officer, every person who works at a school is a potential molester. Your Honor, I'm not asking you to embrace the principle that everyone is a potential molester. However, Your Honor, this is not a new problem. As Your Honor is aware better than I am, this problem has arisen in this court before. This problem has arisen in virtually every court, state and federal, throughout the country. As we've cited in our brief, federal courts for over two decades have been considering this very issue, whether a school district is liable when a teacher molests a child, whether a police department is liable when a police officer molests a citizen. So, Your Honor, this is not something that we read in a law review article. All we have to do is read court opinions for the past two decades, at least, that specifically deal with this problem over and over and over again. And Your Honor, it's our view that when you have a catalog of state and federal case law addressing the same issue, the mere fact that a particular small school district or a police department has been lucky enough to avoid that, that doesn't mean that the danger is not obvious. For example, terrorism is a threat to the United States, but yet the United States has only suffered a few terrorist acts in the United States, and one was almost ten years ago, but yet the United States has engaged in far and extensive and super expensive efforts to prevent them, and I don't think that therefore not, just because it only happened once, almost a decade ago in one jurisdiction, Judge, this problem has been dealt with in the courts over and over again. The question is, Judge, not whether or not it happened at the City of Phoenix Police Department before or whether it happened at the Alhambra School District before. In our view, Your Honor, the question is whether or not the danger was obvious, and we believe that it was obvious. Would you say that there should be a policy that would prevent extracurricular activities by these officers, such as a wake-up club that he was honored for? Absolutely not, Your Honor, and we never suggested that. Is that a danger? It's not a danger if there's proper policies mandating proper supervision. But is there any policy with regard to wake-up clubs? There wasn't as of the time that this case was litigated, Your Honor, no. Should there be? Yes, Your Honor, there should be a policy, and even Sergeant Butcher, the sergeant who is supposed to be supervising Sergeant Dickinson in this case, after this happened, and it's part of the record. It's Volume 2, page 332, I believe. She drafted extensive polishing revisions. Well, maybe she should. I don't know, but maybe she should because she didn't know that there was an issue. That's the whole point. But, you know, whether she didn't know, that's a question of fact, Your Honor. Here's what she also said. She also said, I asked her, this is on page 57 of Volume 2 of the record, quote, did you encourage your officers to report fellow school resource officers that they believed were potentially violating those common-sense rules that you articulated? Answer, they wouldn't know because they're in their own little worlds, SROs. Your Honor, this was an open and obvious danger. The principal of the Alhambra School District, Gene Disicking, he also testified that even though the Alhambra School District didn't have policies, he testified in his deposition. It's in the record. I can find it for you. He testified that there should be policies because this is a real problem, and it's not the policy thou shall not molest the child. It's the policy that you should not be alone with the child after school in strange places. And I'll tell you why that is an important policy. Because when you have a policy that a police officer should not be alone with the child, if the police officer is violating that policy and someone sees him, someone says, hey, listen, isn't that against policy? Maybe I better report that. Maybe I better investigate that. So it has this reinforcing mechanism. First of all, it lets you know, hey, listen, you're not led into temptation because there's a rule that prevents you from taking kids to your home. And it also, if other officers see you taking kids to your home or driving kids where you shouldn't supposed to be driving them, then they will confront you and say, hey, are you violating that rule? Or they'll contact a supervisor. These rules are important, Your Honor. And the California Supreme Court over ten years ago indicated that even though you say that everyone should know that law enforcement officers shouldn't rape people, over ten years ago in the Ann Rae Mary case, the California Supreme Court said, hey, this is a problem. Law enforcement agencies are having policies against that. Your Honor, in fact, that argument that it's already against the law proves too much. Your Honor, it's already against the law for officers to beat prisoners or to use excessive force on prisoners, but yet there's training and policies against that. Yes, Your Honor. I understand the case against Dickerson himself still remains in district court. That's correct. That's correct, Judge Hugg. Your Honor, I'd like to reserve the remaining time. Thank you. And I'll reserve it. Thank you. Excuse me. One of the other of you. Judge Hugg's question and your answer just gave me reason to have a totally unrelated question. Yes, Your Honor. That is, then do we have jurisdiction? Is there still a claim left in district court? Yes, Judge Reimer. Is there jurisdiction? And, Your Honor, I'm sorry, I'm not. Does this court have jurisdiction? Yes, because. We need to have all claims gone and all parties gone. Your Honor, I can respond to that. There is a claim against Officer Dickinson, as I correctly answered to Judge Hugg. Judge Reimer, Judge Snow entered two 54B judgments allowing this appeal to proceed in the face of that claim. And in reference to that remaining claim, I think the judge, the district court judge, has just held it in abeyance. He's not done anything with it pending this appeal. That's great. Thank you very much. Thank you. Good morning, Your Honors. I'm Eileen Gilbride. I'm here on behalf of the city of Phoenix. I'm going to do my best to take about seven to ten minutes at the most and reserve the rest of the time for my co-defendant, Mr. Hazlett, who represents the Alhambra School District. And as I understand it, the city of Phoenix was dismissed on summary judgment. Yes. However, the district or the school district was dismissed on a 12B6 motion as to the pleadings. I believe that's correct. Yes. Partially correct. And I'll let Mr. Hazlett answer on behalf of the district. On behalf of the city, we did win summary judgment. I really don't have a whole lot to add to our brief in this case. I'll just hit the high points. Summary judgment. I tell you, I would appreciate your going right to the heart of the point that Mr. Montoya makes, which is that the absence of a policy in the face of, let's put it this way, widespread recognition that child molestation can be a problem in the school environment, is deliberately indifferent to an obvious problem. There are several answers to that question. The first one is this. Plaintiff didn't even allege deliberate indifference in his complaint. The district court breezed over it in your case, not in the case of the school district. Correct. I can breeze over it, too. However, that is one reason to uphold summary judgment in our favor. The second reason is this. The district court was correct in finding there was no evidence of deliberate indifference for these reasons. First of all, we have case law that we cited in our brief. I believe it's on page 23. There's no need. The claim here was deliberate indifference in training and supervision. On the training issue, there's no need to train somebody not to sexually assault a student, a student resource officer. You got beyond that with him. Yes. The point is that there was no policy, in effect, training against the preliminary steps that would keep an employee out of the danger zone. Okay. We're talking training here. Officers were trained, and they were they took an oath to obey the laws of the State of Arizona. I'm still not going quite to the point, the point being the policy that was missing was one that would say, you know, don't do the kinds of things that will put you in a position of danger. That is, don't take a kid home alone. Don't let yourself be alone with a child with the door closed. You know, whatever. Yes. I mean, so that's the policy that's being, the lack of which is being attacked. And that is the policy that we argue is an obvious thing that you don't put yourself in a position of acting unprofessionally with students. And the other part of this argument is we. Well, it's not necessarily obvious that you shouldn't, if a child was standing on the grounds of the school and didn't have a right home, that you shouldn't offer them a right home. And I'm not sure that should be a policy, because that's what the school resources officers are there to do is to take care of these kids after school. There should be a policy. Are you saying that the city just should leave it up to grabs and leave it up to individual employees' judgment? In part, yes. It is up to the school resource officers' judgment as to how you deal with a kid in a particular situation. If they're sick at school, they do take kids home from school alone in their car. And they can't have a policy that you can't do that. That's one of the things they're there to do. What they can do, the school resource officers, is not sexually assault the kids when they get there. That is the obvious thing that they don't need to be trained about. That is why the city was not deliberately indifferent in not telling their officers, don't sexually assault these kids when you get them home. The other part of this is if there was a policy or an absence of a policy, it had to have motivated this particular officer's conduct. And there is no evidence that what this officer did was because of the absence of a policy. In fact, Sergeant Butcher testified after the fact, of course, after all of this had come to light, well, I think he probably didn't tell me about this because he knew it was wrong, he knew he shouldn't be doing it, he knew I wouldn't approve. And if I had known about it, I would have told him not to do it and I would have told my lieutenant because this is just not appropriate. And so we know that it wasn't the absence of a policy that didn't motivate Officer Dickinson. He knew it was wrong. That's the only evidence that we have on that issue. You have to have motivation by the policy or the absence of the policy in order to have liability under Section 1983. So there's the two parts of that. You have to have the absence of a policy and you have to have the fact that the officer's conduct was motivated by that absence of a policy, and we don't have that here in either case. On the deliberate indifference in supervision, to get to the jury on that issue, plaintiffs had to have evidence, as Your Honor had noted before, that the city, that there were these widespread assaults by school resource officers, the city knew about it and turned a blind eye. They weren't supervising their officers. They were basically having a policy to say go ahead and do this to the kids, we don't care. There's no evidence of that at all. Now, if a plaintiff comes back in his four seconds of rebuttal and says, well, Commander Parra knew that Officer Dickinson was spending too much time with the kids, that is taken out of context. What Commander Parra actually testified was, I was concerned about Officer Dickinson getting burned out too fast. He testified he had no qualms whatsoever about Officer Dickinson doing anything inappropriate with the kids. And so I urge the court to please look at the record very carefully, because as even the district court noted below, there have been some unwarranted expansions of the record that were untrue. And I urge the court to look at the record carefully, and it will see that there's just absolutely no evidence that the city knew this was happening and turned a blind eye so that it was deliberately different at all. Do you argue that the background check, the psychological examination, the weekly visits with the defendant and the weekly visits with the district officers or administration that was there at the school, and that there were no negative reports, do you argue that given those facts, there's no deliberate indifference? Yes, that's part of the reason why they didn't have any knowledge that there was anything wrong going on. The hiring part, the background check, would have gone to a negligent hiring claim, but that claim was not made here. The only federal claim here is deliberately indifferent training and supervision. And so, yes, that is part of it. On the state claim, summary judgment was appropriate for the city for two reasons. One is our immunity statute, which the district judge found applied, and the second was that the officer was outside the course and scope as a matter of law. Both of these reasons support summary judgment on immunity. That statute grants immunity to employers who had no actual knowledge of the employee's propensity to commit these sexual assaults. There's nothing in the record that he had any, that he ever did this before, let alone that the city knew of it, and therefore is denied immunity. That's the immunity part of it. On the course and scope part of it, the district court properly concluded that he was not in the course and scope as a matter of law. Nothing he did was to benefit the employer. He was not motivated in any part to benefit the employer. He was simply motivated to benefit himself. And so for either of these two reasons, summary judgment was appropriate on the state claim. Unless the Court has any questions, I'll turn it over to my co-defendant. Great. Thank you. Thank you. Mr. Kessler. Good morning. My name is Carl Hayes. I represent the Alhambra School District. The Judge Snow in the lower court got it right. He did what the law required him to do. The claim on the 1983 claim, the complaint only alleged vicarious liability and negligence. We were not the employee of Officer Dickerson. It was widely discussed and documented. Everything that was provided through the city of Phoenix Police Department indicates that it was bound by their rules, their regulations. And the city employees who were the city police officers and Officer Dickerson's superiors all indicated that they are city of Phoenix police officer. They work with the school. They're not employed by the school. The Officer Cortez testified, I always work with the administration. I work with them. I tell them first and foremost, I am a Phoenix police officer. I work with you. I don't work for you. I work with you. And that's the relationship they had with the school. The SRR program that we're talking about was one that was set up at my school. These instances took place during the summer when the school was not even in session. Three of them allegedly took place either at the plaintiff's home, at Dickerson's home, or elsewhere. Two took place in the candy room at the school district. The school wasn't in session. The candy room was used by the SRO to raise funds for the program, administration of kids. None of it went to the school district. So it is a judge had no choice. And he did everything he could with the plaintiff and the court below. He said, I'm going to dismiss it with prejudice. Open up, bring me some evidence that will get you within. That never happened. They never produced any evidence that got them within 1983. State claims, as counsel for the city of Phoenix said, he had no choice there. Summary judgment was granted in force, and those cases were dismissed with prejudice. As I understand it, the case, the 12B6 motion, he dismissed and he dismissed with prejudice? Without. Without prejudice. That's correct. I thought I heard you just say with prejudice. I may have. But, no, that was dismissed without prejudice. And, well, I've said enough. Unless you have some questions. All right. Thank you, Mr. Rafferty. Thank you. Mr. Montoya. Principal Gieseking thought, suspected there was grooming. Sergeant Bell suggested there were grooming. To say that neither the district nor the department needs to have any policies whatsoever regarding this, that's not protecting our kids. That is deliberate indifference. Thank you. Thank you, counsel, all of you, for your argument. The matter just heard will be submitted.
judges: Hug, Rymer, Smith N. R.